GIBSON, DUNN & CRUTCHER LLP
ETHAN D. DETTMER, SBN 196046
AMANDA M. ROSE, SBN 222074
One Montgomery Street
San Francisco, California 94104
Telephone: (415) 393-8200
Facsimile: (415) 986-5309
Email: edettmer@gibsondunn.com

Attorneys for
THE NASDAQ STOCK MARKET, INC.


THOMAS P. MORAN
Associate General Counsel
THE NASDAQ STOCK MARKET, INC.
9600 Blackwell Road, 3rd Floor
Rockville, Maryland 20850

Of Counsel

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

C 07 3683 RMW

| | |
|---|---|
| OPULENT FUND, L.P., a Delaware limited partnership and OPULENT LITE, L.P., a Delaware limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>THE NASDAQ STOCK MARKET, INC., a Delaware Corporation,<br><br>Defendant. | CASE NO.<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 & 15 U.S.C. § 78aa**<br><br>[Superior Court in and for the County of Santa Clara, Case No. 107cv086004] |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND

TO PLAINTIFFS OPULENT FUND, L.P. and OPULENT LITE, L.P.:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1441 and 15 U.S.C. § 78aa, THE NASDAQ STOCK MARKET, INC. hereby removes to the United States District Court for the Northern District of California the state court action described below.

## FACTUAL BACKGROUND

1. On May 16, 2007, plaintiffs Opulent Fund, L.P. and Opulent Lite, L.P. commenced an action against The Nasdaq Stock Market, Inc. ("Nasdaq") in the Superior Court of the State of California in and for the County of Santa Clara, Case No. 107cv086004. A true and correct copy of plaintiffs' complaint is attached hereto as Exhibit A.

2. Service of process on Nasdaq was effected on June 19, 2007.

3. Prior to January 2006, Nasdaq was a controlled subsidiary of the National Association of Securities Dealers, Inc. (NASD), a self-regulatory organization (SRO) registered with the Securities Exchange Commission (SEC), 15 U.S.C. § 78o-3. In 1997, the SEC authorized NASD to delegate to Nasdaq its SRO functions for operating and maintaining the Nasdaq Stock Market. *See* SEC Release No. 34-39326, *Order Approving the Plan of Allocation and Delegation of Functions by the NASD to Subsidiaries*, 62 Fed. Reg. 62,385 (Nov. 21, 1997).

4. In January 2006, the SEC approved Nasdaq's application to register The NASDAQ Stock Market LLC (the Exchange) as a national securities exchange. *See* SEC Release No. 34-53128, *In the Matter of the Application of the Nasdaq Stock Market LLC for Registration as a National Securities Exchange*, 71 Fed. Reg. 3550 (Jan. 23, 2006). The Exchange is thus now an independent SRO within the meaning of the Securities Exchange Act, 15 U.S.C. § 78c(a)(26). While the Nasdaq holding company does not "itself carry out regulatory functions, . . . its activities must be consistent with, and not interfere with, the Exchange's self-regulatory obligations." 71 Fed. Reg.

3550, at *3552. Nasdaq has submitted to the jurisdiction of the SEC with respect to activities relating to the Exchange. *Id.*

5.  The Nasdaq-100 Index ("Nasdaq-100") is an index that includes 100 of the largest non-financial securities listed on the Exchange based on market capitalization. *See* http://www.nasdaqtrader.com/trader/defincludes/N100IndexMethod.pdf. The Nasdaq-100 is calculated pursuant to a detailed methodology, and is disseminated throughout the trading day through the Nasdaq Index Dissemination Service. *See id.* The Nasdaq-100 is also published daily on Nasdaq's Web site and through major quotation vendors such as Bloomberg, Reuters, and Thomson's ILX. *See* SEC Release No. 34-51884, *Self-Regulatory Organizations; American Stock Exchange LLC; Notice of Filing and Order Granting Accelerated Approval of Proposed Rule Change Relating to the Listing and Trading of Options, Including LEAPS, on Full and Reduced Values of the Nasdaq 100 Index*, 70 Fed. Reg. 36,973, at *36,974 n.11 (June 27, 2005).

6.  The SEC has made clear that any "index that will underlie an options contract must be reviewed separately as a proposed rule change pursuant to Rule 19b-4 under the [Securities Exchange Act of 1934] before trading in an option based on that index may commence." SEC Release No. 34-19264, *American Stock Exchange, Inc. et al.; Self-Regulatory Organizations; Order Approving Proposed Rule Changes*, 47 Fed. Reg. 53,981, at *53,982 n.6 (Nov. 30, 1982). This is because the SEC has "a regulatory interest in the indices themselves"; as a result, it "reviews all indices prior to the commencement of options trading upon them" regarding, *inter alia*, "[t]he composition and calculation of the index" and "the provisions for ensuring that the index will be widely-disseminated to the public on a timely basis." *Id.* at *53,983.

7.  The Nasdaq-100 has been both reviewed and approved by the SEC pursuant to Rule 19b-4. *See* SEC Release No. 34-22404, *Self Regulatory Organizations; National Association of Securities Dealers, Inc.; Order Approving Proposed Rule Changes and Granting Accelerated*

*Approval to Proposed Rule Change Relating to Index Options*, 50 Fed. Reg. 38,235 (Sept. 20, 1985); SEC Release No. 34-21890, *Self-Regulatory Organizations; National Association of Securities Dealers, Inc.; Proposed Rule Change*, 50 Fed. Reg. 12,672 (March 29, 1985) (explaining the calculation of the Nasdaq-100 and setting forth provisions for the dissemination of its value to the public, and noting that the proposed rule change "will serve to 'perfect the mechanism of a free and open market and a national market system'").

8. The Nasdaq-100 settlement value is based in part "on the NASDAQ Official Opening Price ('NOOP') of the 100 stocks constituting the NASDAQ 100." Exh. A ¶10. The Exchange calculates and disseminates the NOOP pursuant to an SEC-approved rule, just as the value of the Nasdaq-100 is calculated and disseminated pursuant to an SEC-approved rule. *See* SEC Release No. 34-48997, *Self-Regulatory Organizations; Order Granting Approval of Proposed Rule Change by the National Association of Securities Dealers, Inc. To Establish a Nasdaq Official Opening Price*, 69 Fed. Reg. 716 (Jan. 6, 2004).

9. A number of derivative securities are keyed to the Nasdaq-100, including options allegedly purchased by plaintiffs. Exh. A, ¶10. The complaint alleges that Nasdaq negligently calculated the price for the Nasdaq-100 index on the morning of May 19, 2006, and negligently misrepresented that false price to the public, to plaintiffs' detriment. Exh. A, ¶1.

## JURISDICTION

10. This court has original jurisdiction over plaintiffs' action pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1441(a), because the claims arise out of the Securities Exchange Act of 1934, and rules and regulations promulgated thereunder. *See* 15 U.S.C. §§ 78aa (providing *exclusive* jurisdiction in the district courts of the United States for "violations of [the Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder"); 28 U.S.C.

§ 1441(a) ("any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant").

11. Plaintiffs' complaint, although cast in terms of state law, necessarily alleges a violation of SEC approved rules, including, without limitation, the rule approving the Nasdaq-100. *See supra*, ¶7. Since Nasdaq, through the Exchange, undertook its calculation and dissemination of the Nasdaq-100 pursuant to that rule on May 19, 2006, "there can be no viable cause of action; if its actions violated the rule[], any claim falls under the imperative of 15 U.S.C. § 78aa which grants the federal courts 'exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder. . . .'" *Sparta Surgical Corporation v. NASD*, 159 F.3d 1209, 1212 (9th Cir. 1998).

12. Further, plaintiffs' complaint necessarily alleges that Nasdaq violated its duty to act in a manner consistent with the Exchange's self-regulatory obligations. 71 Fed. Reg. 3550, at *3552. Plaintiffs allege that "[t]he orderly and accurate dissemination of price data for the Nasdaq 100 is essential if investment professionals and market participants . . . are to provide liquidity to the market for the Nasdaq 100 and it derivatives." Exh. A, ¶13. Nasdaq's alleged negligent dissemination of this information is therefore inconsistent with the Exchange's obligation to

> foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, to remove impediments to and perfect the mechanism of a free and open market and a national market system, and, in general, to protect investors and the public interest . . . .

15 U.S.C. § 78f(b)(5).

13. Removal is therefore proper under 15 U.S.C. § 78aa and 28 U.S.C. § 1441(a). *See, e.g., Sparta Surgical*, 159 F.3d at 1211-13; *Hawkins v. National Association of Securities Dealers, Inc.*, 149 F.3d 330, 332 (5th Cir. 1998).

## INTRADISTRICT ASSIGNMENT

14. Pursuant to Civ. L.R. 3-2(c) and (e), assignment of this action to the San Jose Division is appropriate because the Complaint was filed in the Santa Clara County Superior Court.

## REMOVAL PROCEDURE

15. Nasdaq hereby complies with 28 U.S.C. § 1446(a) by attaching hereto as Exhibit A all process, pleadings, and orders received in the state court action.

16. This notice is timely under 28 U.S.C. § 1446 because filed within thirty days of service. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-51 (1999).

17. Nasdaq will promptly give written notice of this Notice to plaintiff and will file a copy of this notice with the clerk of the Santa Clara County Superior Court, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Nasdaq removes the original action brought by plaintiffs now pending in the Superior Court for the State of California in and for the County of Santa Clara to this Court.

DATED: July 17, 2007

GIBSON, DUNN & CRUTCHER LLP

By: _____
Ethan D. Dettmer

Attorneys for The Nasdaq Stock Market, Inc.

# Exhibit A

George S. Trevor (Bar No. 127875)
LAW OFFICES OF GEORGE S. TREVOR
300 Tamal Plaza, Suite 180
Corte Madera, California 94925
Telephone: (415) 924-7147
Facsimile: (415) 924-7159
Email: gtrevor@trevorlaw.com

Attorneys for Plaintiffs Opulent Fund, L.P.
and Opulent Lite, L.P.

```
FILED Santa Clara Co
05/16/07   3:56pm
Kiri Torre
Chief Executive Offic
By: transv DTSCIV0100
R#200700048663
CK              $320.00
TL              $320.00
Case: 1-07-CV-086004
```

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

(Unlimited Jurisdiction)

| | |
|---|---|
| OPULENT FUND, L.P., a Delaware limited partnership and OPULENT LITE, L.P., a Delaware limited partnership,<br><br>Plaintiffs,<br><br>vs.<br><br>THE NASDAQ STOCK MARKET, INC., a Delaware corporation; , and Does One through Ten, inclusive,<br><br>Defendants. | CASE NO. **107CV086004**<br><br>**COMPLAINT FOR DAMAGES AND OTHER RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Opulent Fund, L.P., and Opulent Lite, L.P. (collectively "Plaintiffs"), complaining on behalf of themselves individually, alleges the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, based upon inter alia, the investigation conducted by their attorneys.

### INTRODUCTION

1. Plaintiffs' claims arise from the dissemination by defendant The Nasdaq Stock Market, Inc.'s ("Nasdaq" or "Defendant") of erroneous information regarding the price of the Nasdaq 100 Index ("Nasdaq 100") on the morning of May 19, 2006. Based upon the opening prices on May 19 of the 100

1

COMPLAINT FOR DAMAGES

component stocks constituting the Nasdaq 100, the price of the Nasdaq 100 should have been approximately 1590. Instead, the price announced by Nasdaq as the official opening price was 1583.45. Plaintiffs operate as private investment funds and use a proprietary trading model that uses options written on the Nasdaq 100 to achieve trading profits. Based upon Plaintiffs knowledge of the opening prices of the stocks comprising the Nasdaq 100, they calculated the likely price for the Nasdaq 100 to be at least 1590 and maintained positions in options for the Nasdaq 100 based upon that calculation. As more fully alleged below, Nasdaq negligently calculated the price for the Nasdaq 100 on the morning of May 19 and negligently misrepresented that false price to the public. As a direct and proximate result of Defendant's negligence, Plaintiffs suffered losses in excess of $4 million

## JURISDICTION AND VENUE

2. The claims asserted in this complaint arise under California statutory and common law. This Court has jurisdiction over the subject matter of this action under its statutory and other power to afford damages and other relief on the matters stated therein. This Court also have personal jurisdiction over Defendant because the acts and omissions of Defendant took place and resulted in damages and other adverse effects upon the Plaintiffs within the State of California. The amount in controversy exceeds the jurisdictional minimum of this Court.

3. Venue is proper in this Court under Section 395 of the Code of Civil Procedure because the acts and omissions complained of herein took place and caused damages and other adverse effects upon the Plaintiffs within the territorial jurisdiction of this Court.

## PARTIES

4. Plaintiff Opulent Fund a limited partnership organized under the laws of the State of Delaware and maintains its principal place of business in the County of Santa Clara.

5. Plaintiff Opulent Lite is a limited partnership organized under the laws of the State of Delaware and maintains its principal place of business in the County of Santa Clara California

6. Defendant Nasdaq is a corporation organized under the laws of the State of Delaware and maintains its principal place of business in New York, New York. Nasdaq's common stock is publicly traded on the Nasdaq stock market.

7. Plaintiffs are ignorant of the true names and capacities of the Doe defendants and

2

COMPLAINT FOR DAMAGES

therefore sues the Doe defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of the Doe defendants when ascertained. Plaintiffs are informed and believes and thereon alleges that each such fictitiously named Doe defendant is legally responsible in some manner for the events and conduct referred to herein, and legally caused and/or contributed to the injuries and damages alleged herein by plaintiffs.

8. At all relevant times, each defendant, within the course and scope of his, her, or its authority, acted as an agent or representative of the other defendants, and authorized, directed, controlled and/or ratified the acts of the other defendants.

## FACTUAL ALLEGATIONS

9. Opulent Fund was established in August 2001 and Opulent Lite in October 2004 (Collectively referred to as the "Funds"). The Funds are private investment partnerships with a number of individual investors. Both Funds, although with separate managers, use a similar trading strategy. They trade broad based stock index options particularly options written on the Nasdaq 100. While the exact results of the two Funds are confidential information both Funds had been very successful prior to May 19, 2006. Prior to May 2006, Opulent Fund had been profitable in all but one month out of sixty months in operation. Opulent Lite had been profitable in every month out of twenty months.

10. The Nasdaq 100's settlement value is based on the NASDAQ Official Opening Price ("NOOP") of the 100 stocks constituting the Nasdaq 100. See NASDAQ Vendor Alert No. 2005-067 dated November 11, 2005. On the morning of May 19, 2006 Opulent held a number of large positions in Nasdaq 100 options. May 19, 2006, being the third Friday of the month, is of course the settlement date for option positions held by Opulent. During the first hour of trading on May 19, the Nasdaq 100 traded as high as 1604 and not below 1589. Thus, the correct price for the Index, as calculated from NOOP of its 100 component stocks, was at least 1590. However, Nasdaq announced the Index's price that morning at 1583.45.

11. The managers of Opulent were quite surprised by this announcement based upon their knowledge of the NOOP for each of the companies making up the Nasdaq 100 and the trading range during the time just before Nasdaq's official announcement. Immediately after this surprising announcement Opulent's managers obtained the published opening prices of each component of the

3

COMPLAINT FOR DAMAGES

Index. From calculations based upon those prices the settlement price for the Nasdaq 100 should have been 1589.18, a price consistent with the market values reported just prior to Nasdaq's official announcement. Within days this discovery by the managers of Opulent they contact Nasdaq to discuss the erroneous announced price. Despite several calls to Nasdaq they received no response.

12. This difference of over six points had a significant impact on Opulent's positions that morning. Both of the Opulent Funds held significant short put option positions with a strike price of 1590. Instead of an insignificant loss of 0.56 per contract, Opulent lost millions of dollars based upon the Nasdaq's announced settlement price of 1583.44.

13. As the creator of the Nasdaq 100, Nasdaq encourages the use of this Index both directly and derivatively through the use of various put and call options based upon the price of the Nasdaq 100. Nasdaq also encourages the use by market participants of the Nasdaq 100 through Nasdaq Global Funds, Inc., a wholly owned subsidiary of Nasdaq. Nasdaq Global Funds, Inc. pays an annual licensing fee to Nasdaq and issues a tracking stock based upon the Nasdaq 100 that trades on the Nasdaq market under the symbol QQQQ. Nasdaq has undertook an affirmative duty to determine, compose and calculate the price of the Nasdaq 100. Nasdaq establishes the process by which the Nasdaq 100 is priced and disseminates the pricing data to a variety of market participates including Plaintiffs. The orderly and accurate dissemination of price data for the Nasdaq 100 is essential if investment professionals and market participants such as the managers of Opulent are to provide liquidity to the market for the Nasdaq 100 and its derivatives. Without the accurate and timely reporting of such price data, a market in such securities could hardly exist. Moreover, Nasdaq receives substantial payments from certain vendors of market price data. Nasdaq expects this information to be widely disseminated to all market participants, including the managers of the Funds. In calculating and disseminating price data for the Nasdaq 100, Nasdaq is engaged in a for-profit commercial activity.

14. Plaintiffs are among the group or class of persons that Nasdaq would have reasonably expected to receive pricing data for the Nasdaq 100 issued by Nasdaq and act upon such information. Nasdaq intended that market professionals such as Plaintiffs would act upon the information disseminated by Nasdaq such as the opening price of the Nasdaq 100 on May 19, 2006.

## FIRST CLAIM FOR RELIEF

### Negligence

15. Plaintiffs hereby incorporate by reference Paragraphs 1 through 14 above as though fully set forth herein. This claim is brought pursuant to California common law and California Civil Code §1708.

16. Nasdaq had a duty to act with due care in calculating and disseminating the opening day price of the Nasdaq 100. On the morning of May 19, 2006, Nasdaq violated that duty by negligently calculating the opening price of the Nasdaq 100 and disseminating that erroneous information to the public. The true price of the Nasdaq 100 based upon the opening prices of the stocks compromising the Nasdaq 100 should have been at least 1589.18. The erroneous and negligently calculated price as announced that morning by Nasdaq was 1583.44.

17. Plaintiffs are market professionals who trade options to purchase or sell shares of the Nasdaq 100 on a daily basis. Plaintiffs are among the group of persons that Nasdaq expects to receive and act upon the price information for the Nasdaq 100 disseminated by Defendant to the public. Nasdaq owed to Plaintiffs a legal duty to act in a non-negligent in the calculation and dissemination of price data for the Nasdaq 100. In performing the acts alleged in this complaint Nasdaq violated its legal duty owed to Plaintiffs.

18. As a direct and proximate result of the issuance of negligently calculated price data for the Nasdaq 100 on the morning of May 19, 2007, Plaintiffs suffered damages of at least $4 million. If the correct price for the Nasdaq 100 had been disseminated that morning, Plaintiffs' option positions would have been break-even or, at best, a slight loss.

19. As a further direct and proximate result of Nasdaq's negligence in the issuance of price data for the Nasdaq 100, Plaintiffs have suffered lost business opportunities and other damage in amount not presently ascertainable.

20. By virtue of the foregoing, Plaintiffs are entitled to recover damages from Defendant.

## SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation

21. Plaintiffs hereby incorporate by reference Paragraphs 1 through 20 above as though fully

set forth herein. This claim is brought pursuant to California common law.

22. On the morning of May 19, 2006 Defendant issued a public statement that based upon the opening price of the 100 stocks comprising the Nasdaq 100 the price for the Nasdaq 100 was 1583.44. That statement was materially false since the actual price of the Nasdaq 100, based upon the NOOP for each of the 100 stocks comprising the Nasdaq 100, was in fact 1589.18 or higher. When Defendant made the above statement on May 19, 2006 it had no reasonable ground for believing its statement was true and correct.

23. Defendant made the statement regarding the price of the Nasdaq 100 with the intent that Plaintiffs and other market participants would rely upon the truth of such statement and Plaintiffs did rely upon that statement for the purpose of closing option positions Plaintiffs held on May 19, 2006. At the time Plaintiffs closed their option positions, whose price was derived from the price announced by Defendant for the Nasdaq 100, Plaintiffs did not know that Defendant's statement was false.

24. As a direct and proximate result of the negligent misrepresentation made by Defendant on May 19, 2007, Plaintiffs suffered damages of at least $4 million.

25. By virtue of the foregoing, Plaintiffs are entitled to recover damages from Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that judgment be rendered in favor of Plaintiffs against Defendants as follows:

1. For compensatory and general damages according to proof;
2. For special damages according to proof;
3. For prejudgment interest at the maximum legal rate;
4. For the costs of the proceedings herein;
5. For Plaintiffs' reasonable attorneys' fees; and
6. For all such other and further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in this action.

May 15, 2007            LAW OFFICES OF GEORGE S. TREVOR

                        By: _____
                            GEORGE S. TREVOR
                            Attorneys for Plaintiffs

7

COMPLAINT FOR DAMAGES

## DECLARATION OF SERVICE

I, Suzanne Maruschak, declare as follows:

I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is One Montgomery Street, Suite 3100, San Francisco, California, 94104, in said County and State. On July 17, 2007, I served the within:

**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441 & 15 U.S.C. § 78aa**

by placing a true copy thereof in an envelope addressed to each of the persons named below at the address shown:

George S. Trevor
Law Offices of George S. Trevor
300 Tamal Plaza, Suite 180
Corte Madera, California 94925

☐ **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY PERSONAL SERVICE:** I placed a true copy in a sealed envelope addressed to each person[s] named at the address[es] shown and giving same to a messenger for personal delivery before 5:00 p.m. on the above-mentioned date.

☐ **BY FACSIMILE:** From facsimile machine telephone number (415) 393-8304, on the above-mentioned date, I served a full and complete copy of the above-referenced document[s] by facsimile transmission to the person[s] at the number[s] indicated.

☑ **BY UPS OVERNIGHT MAIL:** I placed a true copy in a sealed envelope addressed as indicated above, on the above-mentioned date. I am familiar with the firm's practice of collection and processing correspondence for delivery by UPS. Pursuant to that practice, envelopes placed for collection at designated locations during designated hours are delivered to UPS with a fully completed airbill, under which all delivery charges are paid by Gibson, Dunn & Crutcher, that same day in the ordinary course of business.

I certify under penalty of perjury that the foregoing is true and correct, that the foregoing document(s) were printed on recycled paper, and that this Declaration of Service was executed by me on July 17, 2007, at San Francisco, California.

*Suzanne Maruschak*
Suzanne Maruschak

100264108_1.DOC

DECLARATION OF SERVICE