George S. Trevor (127875)
LAW OFFICES OF GEORGE S. TREVOR
300 Tamal Plaza, Suite 180
Corte Madera, California 94925
Telephone: (415) 924-7147
Facsimile: (415) 924-7159

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| OPULENT FUND, L.P., a Delaware limited partnership and OPULENT LITE, L.P., a Delaware limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>THE NASDAQ STOCK MARKET, INC., a Delaware Corporation, and DOES ONE through TEN, inclusive<br><br>Defendants. | Case No.: C 07-3683 RMW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION DISMISS OF DEFENDANT NASDAQ STOCK MARKET, INC**<br><br>Date:        September 28, 2007<br>Time:        9:00 a.m.<br>Place:       Courtroom of the<br>                  Hon. Ronald M. Whyte |

I.    **INTRODUCTION**

        Defendant's motion to dismiss attempts to recast Plaintiffs' claims into what they

are not – an attack on the regulatory functions of the Nasdaq Stock Market, Inc. ("Nasdaq").  As

plain reading of complaint reveals, Plaintiffs complain that on the morning of May 19, 2006

Nasdaq negligently calculated the opening price of the Nasdaq 100 stock index (the "Nasdaq

100").  As the Ninth Circuit recognized in Sparta Surgical Corporation v. National Assoc.

Securities Dealers, 159 F. 3d 1209, 1213 (9th Cir. 1998):

        "To be sure, self-regulatory organizations do not enjoy complete
        immunity from suits; it is only when they are acting under the aegis
        of the Exchange Act's delegated authority that they so qualify.

**When conducting private business, they remain subject to liability**."

(Emphasis added). The act of calculating and disseminating the price of the Nasdaq 100, an indicia created by and promoted as part of Nasdaq's for-profit business activities clearly does not come under the purview of Nasdaq's regulatory function. Thus, no immunity exists and Defendant's motion must be denied.[1]

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Opulent Fund, L.P. and Opulent Lite, L.P. ("Plaintiffs") are investment limited partnerships organized in Delaware and maintain their principal place of business in Santa Clara County, California. (Complaint, ¶¶ 4-5.) Plaintiffs trade broad-based stock index options, particularly options written on the Nasdaq 100. (Id., ¶ 9.)

Defendant Nasdaq is a corporation organized in Delaware and maintains its principal place of business in New York. (Id., ¶ 6.) Nasdaq created the Nasdaq 100 and encourages its use directly and derivatively through the use of various put and call options based upon the price of the Nasdaq 100. (Id., ¶ 13.) Nasdaq also encourages the use of the Nasdaq 100 by market participants through Nasdaq Global Funds, Inc., a wholly owned subsidiary of Nasdaq. (Id.) Nasdaq Global Funds, Inc. pays an annual licensing fee to Nasdaq and issues a tracking stock based upon the Nasdaq 100 that trades on the Nasdaq market under the symbol QQQQ. (Id.) Nasdaq determines, composes and calculates the price of the Nasdaq 100. (Id.) Nasdaq receives substantial payments from certain vendors of market price data. (Id.) Thus, Nasdaq's activities related to the Nasdaq 100 and the NASDAQ Official Opening Price ("NOOP") are, at least in part, for profit commercial activities.

The settlement value of these Nasdaq 100 options is based on the NOOP of the 100 stocks comprising the Nasdaq 100. (Id., ¶ 10.) On the morning of May 19, 2006, Plaintiffs held a number of large positions in Nasdaq 100 options. (Id.) That date was the settlement date

---

[1] Set for hearing on the same date as Defendant's motion to dismiss is Plaintiffs' motion to remand this action back to the California Superior Court. For the reasons stated in Plaintiffs' moving papers no federal jurisdiction exists since Plaintiffs claims arise solely under California law. If the motion to remand is granted, Plaintiffs submit that the present motion is moot.

1   for the positions.  (Id.)  During the first hour of trading on May 19, the Nasdaq 100 traded as high

2   as 1604 and not below 1589.  (Id.)  Thus, the correct price for the Nasdaq 100, as calculated from

3   NOOP of the 100 component stocks, was over 1589.  (Id.)  Nasdaq announced the Nasdaq 100

4   price that morning at 1583.45.  (Id.)  Immediately following the announcement, Plaintiffs

5   obtained the published opening prices of each component stock in the Nasdaq 100 and computed

6   its settlement price at 1589.18.  (Id., ¶ 11.)  Plaintiffs allege that as a direct and proximate result

7   of Defendant's negligence they have suffered damages of at least Four Million Dollars

8   ($4,000,000).  (Id., ¶ 18.)

9           On July 17, 2007, NASDAQ filed a Notice of Removal of Action Under 28 U.S.C.

10  § 1441 & 15 U.S.C. § 78aa.  Defendant's Notice asserts that federal subject matter jurisdiction

11  exists because:  (1) Defendant is an SEC-approved national securities exchange (Notice, ¶ 4); (2)

12  the Nasdaq-100 Nasdaq 100 was approved by the SEC pursuant to Rule 19b-4 promulgated under

13  the Securities Exchange Act of 1934 ("Exchange Act") (Notice, ¶ 7); and (3) the exchange

14  calculates and disseminates the Nasdaq-100 Nasdaq 100 settlement value pursuant to an SEC-

15  approved rule (Notice, ¶ 8).  The Complaint, according to Defendant, alleges claims arising under

16  the Exchange Act because its rules and regulations are approved by the SEC.  (Notice, ¶¶ 10-12.)

17          On July 23, 2007, Defendant filed a motion seeking dismissal, in part for lack of

18  subject matter jurisdiction.  (Notice of Motion and Motion to Dismiss of Defendant The Nasdaq

19  Stock Market, Inc., pp 8-9.).  On August 10, 2007, Plaintiffs filed their motion to remand this

20  action back to the California Superior Court since no basis for the assertion of federal jurisdiction

21  exists.

22  **III.    ARGUMENT**

23      **A.    Legal Standards**

24          Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) only when

25  a plaintiff's allegations fail "to state a claim upon which relief can be granted."  It is well settled

26  that a motion to dismiss will be denied "unless it appears beyond doubt that the plaintiff can

27  prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson,

28

355 U.S. 41, 45-46 (1957); <u>Howard v. Everex Sys.</u>, 228 F.3d 1057, 1060 (9th Cir. 2000).  In

considering whether the Complaint states a valid claim, the Court must take all of the well-

pleaded factual allegations in the Complaint as true, and must construe all allegations of material

fact most favorably to the plaintiff.  <u>Nursing Home Pension Fund v. Oracle Corp.</u>, 380 F.3d 1226,

1229 (9th Cir. 2004).  The Court cannot parse the Complaint too finely; it must consider the

pleading in its entirety.  <u>Bourjaily v. United States</u>, 483 U.S. 171, 179-80 (1987).  As is well

established under Rule 8(a) of the Federal Rules of Civil Procedure, Plaintiff is only required to

make a "short and plain statement of the claim showing that the pleader is entitled to relief."

Detailed allegations of the evidence supporting a claim are not required.

Defendant also moves to dismiss under Federal Rule of Civil Procedure 12(b)(1)

for lack of subject matter jurisdiction.  Defendant argues that Plaintiffs have failed to exhaust

their administrative remedies with the Securities and Exchange Commission ("SEC").  However,

the only issue necessary to resolve is whether the claimed negligence of Nasdaq involved its

private business activities not its regulatory function.  As shown below, Nasdaq's alleged

wrongdoing is unconnected to its delegated regulatory activities.

**B.**     **<u>Nasdaq Was Engaged In A Private Business Activity When It Negligently Calculated And Disseminated The Price Of The Nasdaq 100</u>**

Plaintiffs' do not dispute the cases cited by Defendant for the proposition that

where a self regulatory organization ("SRO") such as Nasdaq acts pursuant to the regulatory

powers delegated to it by Congress and the SEC pursuant to the Securities Exchange Act of 1934

("Exchange Act") it has immunity from suit.  However, as even the Court in <u>Sparta Surgical</u>

acknowledged, that immunity does not cover all activities engaged in by an SRO.

In particular, Nasdaq is increasingly engaged in commercial activities unrelated to

the regulation of securities markets.  Originally a subsidiary of the NASD making a market in

over-the-counter stocks, Nasdaq has become a stand alone for profit entity which is know

publicly traded.  While Nasdaq does retain many delegated regulatory powers, it is increasingly

engaged in commercial activities that are not regulatory in nature.  Nasdaq in essence wants to

1  have it both ways.  It engages in commercial for profit activities but when attacked for its conduct

2  in a legal forum attempts to cloak itself with quasi-immunity.

3          That the creation and maintenance of the Nasdaq 100 was a part of Nasdaq

4  commercial activities is clear.  Nasdaq created the Nasdaq 100, comprised of the 100 largest non-

5  financial companies listed on the Nasdaq national market system, to promote its market system.

6  (See complaint, ¶13.)  It created through a wholly owned subsidiary a tracking stock for the

7  Nasdaq 100 under the symbol QQQQ and receives licensing revenue from that subsidiary for its

8  use of the QQQQ.  (Id.)  It receives revenue from market participants for the immediate

9  dissemination of pricing data on the Nasdaq 100.  (Id.)

10          Defendant argues that Plaintiffs are attacking Nasdaq's authority to publicly

11  disseminate pricing data for the Nasdaq 100.  Plaintiffs' complaint makes no such attack.  The

12  SEC has clearly approved the use of the Nasdaq 100 and the methodology used to calculate its

13  value.  Plaintiffs' claims are far more focused.  Nasdaq was negligent on the morning of May 19,

14  2006 when it applied its regulatory approved methodology to the price data for the 100 stocks

15  comprising the Nasdaq 100.

16          A simple analogy makes this point clear.  The SEC under its authority granted by

17  Congress by the Exchange Act is charged with regulating the nation's securities markets to ensure

18  a level and fair playing field for all.  However, Congress' grant of power to the SEC was just that

19  – as a regulator.  Congress never envisioned that the SEC would create security markets or issue

20  stocks.  Its role stops at regulation.  The rest is the purview of the private capital markets.  As

21  defendant points out, the Exchange Act also grants the SEC the power to delegate its regulatory

22  powers to SRO's while retaining oversight function.  Thus, any power granted an SRO by the

23  SEC can only pertain to its regulatory function.  Where private actors such as Nasdaq create new

24  securities and markets such as the Nasdaq 100 they do so in their role as market makers for a

25  profit.  Here, Nasdaq has chosen to create a market index that promotes companies listed on its

26  exchange.  It has created a tracking stock that promotes the purchase of the stock of companies

27  included in the Nasdaq 100.  These are clearly commercial activities.

28

The cases cited by Defendant support the position that non-regulatory activities are not protected from suit.  Only when an SRO is "acting under the aegis of the Exchange Act's delegated authority" does it enjoy that privilege.  Sparta Surgical, 159 F. 3d at 1213.  "[A]n SRO, such as the [New York Stock Exchange], may be entitled to immunity from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions."  D'Alessio v. New York Stock Exch., Inc., 258 F. 3d 93, 105 (2d Cir. 2001).

The decision in Sparta Surgical underscores this point.  Plaintiff was a company newly listed on the Nasdaq where Nasdaq delisted the companies stock shortly after its IPO.  The Court correctly ruled that plaintiff's claim directly implicated Nasdaq's delegated authority to ensure orderly markets in securities.  If plaintiffs here were attacking Nasdaq's authority to use the Nasdaq 100 at all or its power to disseminate pricing data, such a claim would be similar to Sparta Surgical.  It is not because what Plaintiffs complain about is that Nasdaq, using the SEC approved methodology for computing the Nasdaq 100's opening price, did so in a negligent manner.  If Plaintiffs' allegations are true, which Defendant admits the Court must presume on this motion, no change is necessary in any SEC rule or regulation.  Any finding of liability would not call in question the continued use of the Nasdaq 100.  It would simple confirm the unremarkable proposition that when a SRO acts in its role as commercial entity and not in its regulatory function it has a legal duty to act in a non-negligent manner.  Such a proposition is fundamental to the entire system of tort law.

**C.     Since Plaintiffs' Claim Does Not Concern Nasdaq's Regulatory Role, Exhaustion Of Administrative Remedies Is Not Required**

Again, Plaintiff does not dispute that where a plaintiff challenges an SRO's actions taken pursuant to its regulatory role it must start by challenging such actions with the SEC.  As the cases cited by defendant indicate, where a plaintiff challenges a disciplinary action or other regulatory action by a SRO the appropriate procedure is to initiate a complaint with the SEC with a right to appeal to the federal appellate courts.  None of these cases hold that where the complained of wrong doing arises out of the SRO's private, for profit and non-regulatory

1   activities, plaintiff's only remedy is through the SEC.  Defendant cites a single California case

2   from 1960 that exhaustion of administrative remedies applies even where the suit "has nothing to

3   do with SRO's federal duty."  Rudolph v. Fulton, 178 Cal. App. 2d 339 (1960).  Rudolph does

4   not state the broad principle defendant suggests.  Instead, the court found that the complaint

5   contained allegations only of actions taken by defendants in a NASD disciplinary proceeding

6   against plaintiff.  Thus, plaintiffs' unsupported allegations in his opposition to a demurrer and his

7   appellate brief that defendants violated his constitutional rights did not provide a basis for finding

8   subject matter jurisdiction since such facts were not alleged in his complaint.  Rudolph, 178 Cal.

9   App. 2d at 342-43.  (Rudolph's failure to support the proposition for which defendant cites it may

10  explain defendant's failure supply a pinpoint cite for that proposition.  See Defendant's

11  memorandum at 8:24.)  Here, Plaintiffs' allegations focus solely on Defendant's commercial

12  activities.  Nothing Plaintiffs allege implicates any regulatory function of Nasdaq.

13          Exactly what defendant expects Plaintiffs to seek from the SEC is not explained.

14  Plaintiffs do not seek review of disciplinary action by Nasdaq.  Plaintiffs do not allege that

15  Defendant violated any exchange rule or regulation.  Plaintiffs simple seek recovery of the

16  damages caused by the negligence of Nasdaq employees in calculating the price of the Nasdaq

17  100 on a specific date and time.  One final analogy shows the absurdity of Nasdaq's position.  If a

18  Nasdaq employee was to be driving in San Francisco on company business, in other words in the

19  course and scope of his duties for Nasdaq, and negligently runs a red light hitting Plaintiff's

20  vehicle and causing personal injury to Plaintiff, Plaintiff certainly would not be required to seek

21  his remedy through the SEC.  Nor could Nasdaq with a straight face say such activities constitute

22  its regulatory function and it is immune from suit in a California Superior Court.  Here, the same

23  is true.  Nasdaq, through its employees, is alleged to have acted negligently causing injury to

24  Plaintiffs.  Plaintiffs agree that there exists no federal jurisdiction over its state law claims for the

25  reasons stated in their motion to remand.  These are state law claims that do not implicate any

26  federal security regulation or statute.  Thus, no immunity exists and no administrative remedies

27  need to be pursued.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.    <u>**CONCLUSION**</u>

For the reasons stated above, Plaintiffs request that the Court deny Defendant's motion to dismiss.  A proposed form of Order is submitted herewith.

Dated:  September 7, 2007              LAW OFFICES OF GEORGE S. TREVOR


By: _____/s/ *George S. Trevor*_____
          George S. Trevor

Attorney for Plaintiffs