GIBSON, DUNN & CRUTCHER LLP
ETHAN D. DETTMER, SBN 196046
AMANDA M. ROSE, SBN 222074
One Montgomery Street
San Francisco, California 94104
Telephone: (415) 393-8200
Facsimile: (415) 986-5309
Email: edettmer@gibsondunn.com

Attorneys for
THE NASDAQ STOCK MARKET, INC.

THOMAS P. MORAN
Associate General Counsel
THE NASDAQ STOCK MARKET, INC.
9600 Blackwell Road, 3rd Floor
Rockville, Maryland 20850

Of Counsel

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPULENT FUND, L.P., a Delaware limited partnership and OPULENT LITE, L.P., a Delaware limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>THE NASDAQ STOCK MARKET, INC., a Delaware Corporation,<br><br>Defendant. | CASE NO. C 07 3683 RMW<br><br>**OPPOSITION TO PLAINTIFFS' MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date: September 28, 2007<br>Time: 9:00 a.m.<br>Judge: Hon. Ronald M. Whyte |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................................... 1

II.    BACKGROUND .................................................................................................................. 2

    A.    Cooperative Regulation Under The Exchange Act By The SROs And The SEC. ....................................................................................................................... 2

    B.    Nasdaq Calculates And Disseminates The Nasdaq-100 Index As Approved By The Securities And Exchange Commission Under The Securities Exchange Act Of 1934. ............................................................................................................ 2

    C.    Opulent Funds' Only Claim Is That Nasdaq Was Negligent In Calculating And Disseminating To The Public The Nasdaq-100 Index Price. ........................................ 3

III.    LEGAL ARGUMENT ......................................................................................................... 4

    A.    Standard Of Review. ............................................................................................... 4

    B.    Exclusive Jurisdiction Over This Action Lies In This Court, Regardless Of Opulent Funds' Attempt To Artfully Plead State Law Claims. .................................... 4

    C.    Opulent Funds' Arguments Ignore Controlling Authority Or Are Irrelevant To The Facts Of The Instant Case. ..................................................................................... 5

        1.    Nasdaq's Rules Regarding The Nasdaq-100 Index Are "Rules Or Regulations" Promulgated Under The Exchange Act. .................................... 6

        2.    Opulent Funds Admit That Calculation And Dissemination Of The Nasdaq-100 Index Is Regulatory In Nature, Regardless Of Whether They Also Have A Commercial Component. .................................................... 9

    D.    Opulent Funds Are Not Entitled To An Award Of Fees Because Removal Was Proper. ....................................................................................................................... 11

IV.    CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Barbara v. New York Stock Exch., Inc.*,
   99 F.3d 49 (2d Cir. 1996) .................................................................................................. 6, 8

*Blue Water Fabricators, Inc. v. First of Michigan Corp.*,
   1988 WL 126568 (E.D. Mich. July 14, 1988) ....................................................................... 7

*Coman v. International Playtex, Inc.*,
   713 F. Supp. 1324 (N.D. Cal. 1989) ................................................................................... 11

*Credit Suisse First Boston Corp. v. Grunwald*,
   400 F.3d 1119 (9th Cir. 2005) .............................................................................................. 9

*Draper v. ERB*,
   No. C-93-4600, 1994 WL 478821 (N.D. Cal. Aug. 25, 1994),
   *aff'd*, 62 F.3d 1424 (9th Cir. 1995) ................................................................................... 11

*Finance and Trading Ltd. v. Rhodia*,
   2004 U.S. Dist. LEXIS 24148 (S.D.N.Y. Nov. 30, 2004) ............................................. 10, 11

*Ford v. Hamilton Investments, Inc.*,
   29 F.3d 255 (6th Cir. 1994) ................................................................................................... 7

*Hawkins v. Nat'l Assoc. of Sec. Dealers, Inc.*,
   149 F.3d 330 (5th Cir. 1998) .............................................................................................. 4, 5

*Lange v. H. Hentz & Co.*,
   418 F. Supp. 1376, (N.D. Tex. 1976) .......................................................................... 6, 7, 8

*Lippitt v. Raymond James Fin. Servs., Inc.*,
   340 F.3d 1033 (9th Cir. 2003) ............................................................................................ 10

*Merrell Dow Pharms. v. Thompson*,
   478 U.S. 804 (1986) .............................................................................................................. 8

*Merrill Lynch, Pierce, Fenner & Smith v. Georgiadis*,
   903 F.2d 109 (2d Cir. 1990) .................................................................................................. 7

*Petrie v. The Pacific Stock Exch., Inc.*,
   982 F.Supp. 1390 (N.D. Cal. 1997) ................................................................................. 6, 7

*Shearson/American Express Inc. v. McMahon*,
   482 U.S. 220 (1987) ........................................................................................................... 8-9

*Smith Barney v. Painters Local Union No. 109 Pension Fund*,
   976 F. Supp. 1293 (D. Neb. 1996) .......................................................................................... 7

*Sparta Surgical Corp. v. Nat'l Assoc. of Sec. Dealers, Inc.*,
   159 F.3d 1209 (9th Cir. 1998) ........................................................................................ *passim*

*Ultramar America Ltd. v. Dwelle*,
   900 F.2d 1412 (9th Cir. 1990) ................................................................................................ 4

*Zandi-Dulabi v. Pacific Retirement Plans, Inc.*,
   828 F. Supp. 760 (N.D. Cal. 1993) ....................................................................................... 11

## STATUTES

15 U.S.C. § 78aa ................................................................................................................. *passim*

15 U.S.C. § 78c(a)(26) ................................................................................................................. 2

15 U.S.C. § 78f(b)(5) ............................................................................................................. 2, 10

15 U.S.C. § 78o-3 ......................................................................................................................... 6

15 U.S.C. § 78o-3(b)(6) ........................................................................................................... 6, 8

15 U.S.C. § 78s ............................................................................................................................ 8

15 U.S.C. § 78s(b) ....................................................................................................................... 8

15 U.S.C. § 78s(b)(2) .................................................................................................................. 2

15 U.S.C. § 78s(b)(4) .................................................................................................................. 8

15 U.S.C. § 78s(c) ....................................................................................................................... 9

15 U.S.C. § 78s(g)(1) ............................................................................................................ 2, 11

28 U.S.C. § 1447(c) .................................................................................................................... 11

## OTHER AUTHORITIES

SEC Release No. 34-19264, *American Stock Exchange, Inc., et al.*; *Self-Regulatory Organizations*; *Order Approving Proposed Rule Changes*, 47 Fed. Reg. 53,981 (Nov. 30, 1982) ................................................................................................................... 2-3, 5, 9, 11

SEC Release No. 34-21890, *Self-Regulatory Organizations*; *National Association of Securities Dealers, Inc.*; *Proposed Rule Change*, 50 Fed. Reg. 12,672 (March 29, 1985) ........................... 3, 6

SEC Release No. 34-22404, *Self-Regulatory Organizations*; *National Association of Securities Dealers*, *Inc.*; *Order Approving Proposed Rule Changes and Granting Accelerated Approval to Proposed Rule Change Relating to Index Options*, 50 Fed. Reg. 38,235 (Sept. 20, 1985) ....... 3, 6

SEC Release No. 34-48997, *Self-Regulatory Organizations; Order Granting Approval of Proposed Rule Change by the National Association of Securities Dealers, Inc. To Establish a Nasdaq Official Opening Price*, 69 Fed. Reg. 716 (Jan. 6, 2004) ...................................................... 6

SEC Release No. 34-53128, *In the Matter of the Application of the Nasdaq Stock Market LLC for Registration as a National Securities Exchange*, 71 Fed. Reg. 3550 (Jan. 23, 2006).................. 2

**RULES**

Fed. R. Civ. P. 12(b)(6).................................................................................................................. 3

Defendant The Nasdaq Stock Market, Inc. (Nasdaq) respectfully submits this Opposition to the Motion to Remand for Lack of Subject Matter Jurisdiction, filed by plaintiffs Opulent Fund, L.P. and Opulent Lite, L.P. (Opulent Funds) on August 10, 2007 (dkt. #8).

**I.    INTRODUCTION**

Section 27 of the Securities Exchange Act of 1934 (Exchange Act) gives federal district courts "*exclusive* jurisdiction of violations of [the Exchange Act] or the rules and regulations thereunder, and of *all* suits in equity and actions at law brought to enforce *any duty or liability created* by [the Exchange Act] or the rules and regulations thereunder." 15 U.S.C. § 78aa (emphases added). This Court has exclusive jurisdiction over this case because Opulent Funds' suit was brought to enforce duties created by rules and regulations approved by the Securities and Exchange Commission (SEC) under the Exchange Act, and necessarily alleges violations of the Exchange Act, and those rules and regulations.

Opulent Funds claim that Nasdaq negligently calculated, and then disseminated to the public, erroneous information regarding the value of the Nasdaq 100-Index. Opulent Funds trade financial options based on the value of the Nasdaq 100-Index, and claim that they were damaged by Nasdaq's allegedly erroneous calculation and dissemination of information regarding the value of the Nasdaq-100 Index. But calculation and dissemination of this information are responsibilities that Nasdaq carries out pursuant to rules that were reviewed and approved by the SEC under the Exchange Act, and federal law requires Nasdaq to follow those SEC-approved rules in carrying out its duties. Indeed, the SEC noted its regulatory interest in the Nasdaq-100 Index as it relates to the trading of financial options, and required that such options could not be traded on that Index unless and until the manner of calculation of the Index's value, and the manner of its public dissemination, had been specifically reviewed and approved by the SEC as a rule change under the Exchange Act.

Because the conduct Opulent Funds challenge was carried out because of, and pursuant to, rules approved by the SEC under the Exchange Act, Section 27 mandates that any claims based on that alleged conduct are necessarily subject to the exclusive jurisdiction of the federal district courts. Thus jurisdiction in this Court is proper, and Opulent Funds' Motion to Remand and request for fees should be denied.

## II. BACKGROUND

### A. Cooperative Regulation Under The Exchange Act By The SROs And The SEC.

The NASDAQ Stock Market LLC (the Exchange) is a Self Regulatory Organization (SRO) registered with the SEC under the Exchange Act. *See* 15 U.S.C. § 78c(a)(26); SEC Release No. 34-53128, *In the Matter of the Application of the Nasdaq Stock Market LLC for Registration as a National Securities Exchange*, 71 Fed. Reg. 3550 (Jan. 23, 2006).[1] As such, the Exchange is required by federal law to "comply with the provisions of [the Exchange Act], the rules and regulations thereunder, and its own rules." 15 U.S.C. § 78s(g)(1).

Among the legal requirements it must adhere to, the Exchange's rules must be designed "to facilitat[e] transactions in securities, to remove impediments to and perfect the mechanism of a free and open market and a national market system, and, in general to protect investors and the public interest." 15 U.S.C. § 78f(b)(5). Before any proposed rule of the Exchange may go into effect (with exceptions not pertinent here), the SEC must first give notice of the proposed rule change and an opportunity for public comment, and approve the proposed rule change only if it is found to be "consistent with the requirements of [the Exchange Act] and the rules and regulations thereunder." 15 U.S.C. § 78s(b)(2).

### B. Nasdaq Calculates And Disseminates The Nasdaq-100 Index As Approved By The Securities And Exchange Commission Under The Securities Exchange Act Of 1934.

The SEC stated, with respect to a different SRO's request to allow options trading based on a stock index, that "[e]ach index that will underlie an options contract must be reviewed separately as a proposed rule change pursuant to Rule 19b-4 under the [Exchange] Act before trading on an option based on that index may commence." SEC Release No. 34-19264, *American Stock Exchange*, *Inc.*, *et*

---

[1] The Exchange is a wholly-owned subsidiary of Nasdaq. The relevant history, structure and relationships of Nasdaq, the Exchange, and the National Association of Securities Dealers, Inc. (NASD) are set forth in the Motion to Dismiss (Dkt. #5) at page 3 & notes 1 and 2, and incorporated herein by this reference. Note that NASD has recently changed its name to the Financial Industry Regulatory Authority (FINRA). For ease of reference, however, it is referred to as NASD in this brief.

*al.*; *Self-Regulatory Organizations*; *Order Approving Proposed Rule Changes*, 47 Fed. Reg. 53,981, 53,982 n.6 (Nov. 30, 1982).

Pursuant to this directive, NASD submitted to the SEC a description of the Nasdaq-100 Index, including its composition, calculation and public dissemination, seeking the SEC's approval of the Nasdaq-100 Index for purposes of allowing trading options based on that Index. SEC Release No. 34-21890, *Self-Regulatory Organizations*; *National Association of Securities Dealers, Inc.*; *Proposed Rule Change*, 50 Fed. Reg. 12,672 (March 29, 1985). After reviewing NASD's submission, the SEC approved the NASD's proposed rule change and allowed the use of the Nasdaq-100 Index as a basis for trading financial options, finding it "consistent with the [Exchange] Act and the rules and regulations thereunder applicable to a national securities association." SEC Release No. 34-22404, *Self-Regulatory Organizations*; *National Association of Securities Dealers, Inc.*; *Order Approving Proposed Rule Changes and Granting Accelerated Approval to Proposed Rule Change Relating to Index Options*, 50 Fed. Reg. 38,235 at *8 (Sept. 20, 1985).

Opulent Funds admit the regulatory significance of Nasdaq's conduct at issue in this case, stating that "[t]he orderly and accurate dissemination of price data for the Nasdaq 100 is essential if investment professionals and market participants such as the managers of Opulent are to provide liquidity to the market for the Nasdaq 100 and its derivatives." Complaint, ¶ 13.

**C.    Opulent Funds' Only Claim Is That Nasdaq Was Negligent In Calculating And Disseminating To The Public The Nasdaq-100 Index Price.**

Opulent Funds allege that they are investment limited partnerships that trade stock index options, including options based on the Nasdaq-100 Index, which itself is based in part on the Nasdaq Official Opening Price of the stocks that make up the Nasdaq-100 (the NOOP). Complaint, ¶¶ 4-5 & 9-10.[2] Opulent Funds claims that Nasdaq negligently calculated the price of the Nasdaq-100 Index on a particular day, disseminated that allegedly erroneous information to the public, and thereby caused harm to Opulent Funds. *Id*. at ¶¶ 10-12 & 16-24.

---

[2]   Nasdaq accepts as true the material factual allegations of Opulent Funds' Complaint, solely for purposes of the Court's consideration of the instant motion and the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Motion to Dismiss (dkt #5), pp. 5-6.

### III. LEGAL ARGUMENT

**A.  Standard Of Review.**

While the existence of federal question jurisdiction is usually determined from the face of the complaint (*Ultramar America, Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990)), "[a] plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can only be made under federal law." *Sparta Surgical Corp. v. Nat'l Assoc. of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998). Further, "the rule that state law claims cannot be alchemized into federal causes of action by incidental reference … has no application when relief is partially predicated on a subject matter committed exclusively to federal jurisdiction." *Id.*, at 1212-13, *citing Hawkins v. Nat'l Assoc. of Sec. Dealers, Inc.*, 149 F.3d 330, 332 (5th Cir. 1998) (internal citation omitted).

**B.  Exclusive Jurisdiction Over This Action Lies In This Court, Regardless Of Opulent Funds' Attempt To Artfully Plead State Law Claims.**

This Court has exclusive jurisdiction over cases brought to "enforce any liability or duty created by [the Exchange Act] or the rules or regulations thereunder." 15 U.S.C. § 78aa. The Ninth Circuit held, in the decision that controls the outcome of this Motion, that "[t]he viability of *any* cause of action founded upon NASD's conduct in de-listing a stock or suspending trading depends on whether the association's rules were violated." *Sparta Surgical*, 159 F.3d at 1212 (emphasis added). Nasdaq's calculation and public dissemination of the Nasdaq-100 Index price is not distinguishable, for purposes of this Motion, from the NASD conduct at issue in *Sparta Surgical*. In both cases, plaintiffs' claims are based entirely on conduct of an SRO that supposedly violated the SEC-approved rules of the SRO in question. *Compare id*. at 1211 (Sparta claimed that NASD improperly suspended trading in Sparta securities, causing harm to Sparta); *with* Complaint at ¶¶ 10-12 & 16-24 (Nasdaq had a duty to properly calculate the Nasdaq-100 prices and failed to do so, causing harm to Opulent Funds). "If [the SRO's] actions conformed to the rules, there can be no viable cause of action; if its actions violated the rules, any claim falls under the imperative of 15 U.S.C. § 78aa which grants the federal courts 'exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder …'." *Sparta Surgical*, 159 F.3d at 1212.

Opulent Funds rely on the fact that their claims are articulated solely in terms of state law, arguing that their "well-pleaded complaint alleges only claims for negligence and negligent misrepresentation under California law." Motion to Remand, p. 4. But the Ninth Circuit has made clear that this fact is not dispositive, as "[a] plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state law terms a claim that can be made only under federal law." *Sparta Surgical*, 159 F.3d at 1212. Indeed, Nasdaq's duty to calculate and disseminate the Nasdaq-100 Index in connection with options trading exists only as a result of SEC approval under the Exchange Act, and cannot exist without SEC approval, or in a manner that differs from what was approved by the SEC under the Exchange Act. If the SEC had not approved Nasdaq's manner of calculating and disseminating the Nasdaq-100 Index, there would be no trading on options based on that Index, and there would have been no intersection between Opulent Funds and Nasdaq. *See* SEC Release No. 34-19264, 47 Fed. Reg. at 53,982 n.6.

Thus, Opulent Funds' reliance on the fact that their complaint alleges only state law claims is wholly misplaced. Because their complaint *necessarily* alleges a violation of SEC-approved SRO rules, and thus was brought to enforce duties or liabilities arising under the Exchange Act, this Court has exclusive jurisdiction over this case, "even though [plaintiffs'] remaining claims were 'carefully articulated in terms of state law' …." *Sparta Surgical*, 159 F.3d at 1212, *citing Hawkins*, 149 F.3d at 332; *see* 15 U.S.C. § 78aa.

**C.    Opulent Funds' Arguments Ignore Controlling Authority Or Are Irrelevant To The Facts Of The Instant Case.**

Opulent Funds argue that this Court does not have exclusive jurisdiction because 1) Nasdaq's rules regarding the Nasdaq-100 Index are not "rules or regulations" promulgated under the Exchange Act, and 2) Nasdaq's actions in connection with the Nasdaq-100 Index are commercial, and not regulatory, in nature, as Nasdaq sells to the public information regarding the Index, as well as a financial product based on the Index. Opulent Funds' arguments are wrong as a matter of law, and the cases Opulent Funds rely on in support of those arguments have either been disapproved by the Ninth Circuit, or simply have no bearing on the facts of the instant case.

Gibson, Dunn & Crutcher LLP

5

OPPOSITION TO MOTION TO REMAND                                    Case No. C 07 3683 RMW

1. **Nasdaq's Rules Regarding The Nasdaq-100 Index Are "Rules Or Regulations" Promulgated Under The Exchange Act.**

The SEC has specifically approved, as a regulatory matter, Nasdaq's procedures for calculating and disseminating to the public the Nasdaq-100 Index, as well as the procedures for calculating the underlying securities prices. SEC Release No. 34-21890, 50 Fed. Reg. 12,672 (describing rule change proposal to the SEC for the Nasdaq-100 Index, including the calculation and public dissemination of the Index, so that financial options may be traded based on the Index); SEC Release No. 34-22404, 50 Fed. Reg. 38,235 (approving, pursuant to the Exchange Act, proposed rule change regarding the Nasdaq-100 Index so that financial options could be traded based on that Index).[3]

Opulent Funds argue, to the contrary, that SRO rules are not "rules or regulations" promulgated under the Exchange Act, that they are instead merely "contractual in nature," and thus do not give rise to federal jurisdiction. Motion to Remand, pp. 5-8, *citing Petrie v. The Pacific Stock Exch., Inc.*, 982 F.Supp. 1390, 1395 (N.D. Cal. 1997); *Lange v. H. Hentz & Co.*, 418 F. Supp. 1376, 1379-81 (N.D. Tex. 1976); and *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 53-54 (2d Cir. 1996). But each of these principal authorities was decided before the Ninth Circuit decided *Sparta Surgical*, and none of them can be reconciled with *Sparta Surgical's* reasoning or result (to the extent they are even relevant to the matters at issue here).

According to Opulent Funds, the SRO defendant in *Petrie* removed that case because the plaintiff alleged "that the [defendant] failed to follow its own rules and regulations promulgated under the [Exchange Act] and that the claims l[ay] exclusively in federal court pursuant to Section 27." Motion to Remand, p. 5, *citing Petrie*, 982 F. Supp. at 1392. The district court remanded the

---

[3] The Nasdaq-100 settlement value is based in part "on the NASDAQ Official Opening Price ('NOOP') of the 100 stocks constituting the NASDAQ 100." Complaint, ¶ 10. The Exchange calculates and disseminates the NOOP pursuant to an SEC-approved rule. *See* SEC Release No. 34-48997, *Self-Regulatory Organizations; Order Granting Approval of Proposed Rule Change by the National Association of Securities Dealers, Inc. To Establish a Nasdaq Official Opening Price*, 69 Fed. Reg. 716 (Jan. 6, 2004) ("[T]he Commission believes that the proposed rule change is consistent with Section 15A of the Act [15 U.S.C. § 78o-3] in general, and furthers the objectives of Section 15A(b)(6) [15 U.S.C. § 78o-3(b)(6)] in particular").

1  matter to state court, reasoning that "all that is required to resolve the Petries' claims is an
2  interpretation of the rules of the [SRO]," and "[t]hese questions are contractual in nature, and do not
3  create federal jurisdiction. *Petrie*, 982 F. Supp. at 1395 (*quoted in* Motion to Remand, p. 5). But the
4  Ninth Circuit held that "if [an SRO's] actions violated [its] rules, any claim falls under the imperative
5  of 15 U.S.C. § 78aa" and the federal courts have exclusive jurisdiction. *Sparta Surgical*, 159 F.3d at
6  1212. Because the language Opulent Funds rely on cannot be reconciled with this holding in *Sparta
7  Surgical*, *Petrie* is not good law on this point.

8        Opulent Funds rely on a number of cases that were cited by the *Petrie* court in support of the
9  proposition that SRO rules do not create federal jurisdiction, as they are "contractual in nature."
10  Motion to Remand, p. 5, citing *Merrill Lynch*, *Pierce*, *Fenner & Smith v. Georgiadis*, 903 F.2d 109,
11  113 (2d Cir. 1990); *Ford v. Hamilton Investments*, *Inc.*, 29 F.3d 255, 259 (6th Cir. 1994); *Lange*, 418
12  F. Supp. at 1379; *Blue Water Fabricators*, *Inc. v. First of Michigan Corp.*, 1988 WL 126568 at *3
13  (E.D. Mich. July 14, 1988); *Smith Barney v. Painters Local Union No. 109 Pension Fund*, 976 F.
14  Supp. 1293 (D. Neb. 1996); *see Petrie*, 982 F. Supp. at 1395 (citing these cases). But each of these
15  cases was a dispute between investors and investment firms, and none of these cases involved an
16  SRO as a party. Thus, in sharp contrast to the instant case, none of these cases involved allegations
17  against an SRO operating under the Congressionally-created statutory scheme set forth in the
18  Exchange Act and the rules and regulations thereunder. Further, all of these cases were decided
19  before the controlling Ninth Circuit decision in *Sparta Surgical*.

20        Opulent Funds also rely on the *Petrie* Court's reasoning that federal jurisdiction was
21  inappropriate under Section 27 because "this provision does not expressly authorize private actions
22  for stock exchange violations," and "the source of plaintiffs' rights must be found, if at all, in the
23  substantive provisions of the [Exchange Act] which they seek to enforce, not in the jurisdictional
24  provision." *Petrie*, 982 F.Supp. at 1395-96; *see* Motion to Remand, pp. 5-6. But the Ninth Circuit
25  also rejected this argument in *Sparta Surgical*, recognizing that Section 27 was Congress's express
26  direction that the district courts have exclusive jurisdiction over alleged violations of the Exchange
27  Act and rules and regulations promulgated thereunder, *regardless* of whether a private right of action
28  exists for such claims. *Sparta Surgical*, 159 F.3d at 1212.

Opulent Funds' reliance on *Barbara* is misplaced for the same reason. Opulent Funds note that, in *Barbara*, the Second Circuit "relied on *Merrell Dow* [*Pharms. v. Thompson*, 478 U.S. 804 (1986),] which stated that Congress' failure to provide a private right of action for violation of [a different statute] supported a conclusion that the presence of a claimed violation of the statute as an element of a state law claim was insufficiently substantial to confer federal question jurisdiction." Motion to Remand, pp. 7-8, *citing and quoting Barbara*, 99 F.3d at 54 (internal quotation marks omitted by Opulent Funds). But the Ninth Circuit considered this argument and held to the contrary in *Sparta Surgical*, stating that Section 27 "vests exclusive jurisdiction over claims concerning duties created by exchange rules in the federal courts," and thus *Merrell Dow* did not divest the district court of jurisdiction. *Sparta Surgical*, 159 F.3d at 1212.

Finally, Opulent Funds quotes at length from the 1976 decision in *Lange v. H. Hentz & Co.*, in support of the proposition that an alleged breach of SRO rules does not give rise to federal jurisdiction because SRO rules are merely private contractual terms. Motion to Remand, pp. 6-7. As noted above, *Lange* is irrelevant to the instant case because it involved a "garden variety" dispute between an individual investor and an investment firm (418 F. Supp. at 1380), and thus did not—in contrast to the instant case—go to the heart of an SRO's regulatory role as part of the comprehensive federal scheme under the Exchange Act. But even if *Lange* were relevant to the instant case, it is directly contrary to the pertinent rule in *Sparta Surgical*, 159 F.3d at 1212. Indeed, Opulent Funds' extensive reliance on *Lange* is particularly inappropriate as that case is based on the Exchange Act as it existed before it was amended in 1975 to require SEC approval of *all* proposed SRO rules before those rules could go into effect (with some exceptions not relevant here). *See Lange*, 418 F.Supp. at 1377 n.2 (events at issue in *Lange* occurred well before 1975); 15 U.S.C. § 78s(b).[4] In light of these

---

[4] Since the Exchange Act was amended in 1975, *all* SRO rules (with exceptions not relevant here) must be approved by the SEC before they can take effect. *See* 15 U.S.C. § 78s(b). The SEC must ensure, among other things, that the SROs' rules "are designed to . . . remove impediments to and perfect the mechanism of a free and open market and a national market system." *See* 15 U.S.C. § 78o-3(b)(6). And the Exchange Act requires the SEC to find, prior to approving them, that SRO rules are in the public interest and will protect investors. *See* 15 U.S.C. § 78s. The SEC's approval of an SRO rule constitutes a determination by the SEC that the rule comports with congressional directives. *See Shearson/American Express Inc. v.*
[Footnote continued on next page]

amendments, and the congressionally-required SEC approval of SRO rules before they become effective, there is no doubt that these rules have a far different jurisdictional effect than contractual rules of a private association. *See Sparta Surgical*, 159 F.3d at 1212; *see also Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1128-32 (9th Cir. 2005) (discussing 1975 Exchange Act amendments and preemptive effect of SEC-approved rules of SROs).

### 2. Opulent Funds Admit That Calculation And Dissemination Of The Nasdaq-100 Index Is Regulatory In Nature, Regardless Of Whether They Also Have A Commercial Component.

Opulent Funds claim that Nasdaq, itself or through a subsidiary, sells information related to the Nasdaq-100 Index, and "encourages the use of the Index by market participants through Nasdaq Global Funds, Inc., a wholly owned subsidiary of Nasdaq." Motion to Remand, p. 2, *citing* Complaint, ¶ 13. Opulent Funds also allege that Nasdaq receives a "licensing fee" in connection with the Nasdaq-100 Index and "receives substantial payments from certain vendors of market price data." *Ibid.*[5]  But whether Nasdaq sells information to the public regarding the Nasdaq-100 Index, in addition to its regulatory and market-facilitating function in calculating and disseminating the Nasdaq-100 Index, is simply not relevant to the Court's inquiry.

There is no question that calculation and dissemination of the Nasdaq-100 Index is regulatory in nature. The SEC has specifically stated that it reviews and approves indices for options trading (including "[t]he composition and calculation of the index" and "the provisions for ensuring that the index will be widely-disseminated to the public on a timely basis"), because it has "a regulatory interest in the indices themselves." SEC Release No. 34-19264, 47 Fed. Reg. at 53,982-83 & n.6. Nasdaq's calculation and dissemination of the Nasdaq-100 Index is part of its duty under the Exchange Act to "facilitat[e] transactions in securities, to remove impediments to and perfect the

---

[Footnote continued from previous page]
 *McMahon*, 482 U.S. 220, 233 (1987) ("No proposed rule change may take effect unless the SEC finds that the proposed rule is consistent with the requirements of the Exchange Act"). The SEC "may abrogate, add to, and delete from" an SRO's rules if it finds such changes necessary or appropriate to further the objectives of the Exchange Act. 15 U.S.C. § 78s(c).

[5] Opulent Funds also allege that Nasdaq issues a "tracking stock based upon the Index that trades on the Nasdaq market under the symbol QQQQ." *Ibid*. It does not appear from the Complaint, however, that Opulent Funds' allegations have anything to do with this security.

1 mechanism of a free and open market and a national market system, and, in general, to protect
2 investors and the public interest." 15 U.S.C. § 78f(b)(5). Indeed, Opulent Funds admit that "[t]he
3 orderly and accurate dissemination of price data for the Nasdaq 100 is essential if investment
4 professionals and market participants . . . are to provide liquidity to the market for the Nasdaq 100
5 and it derivatives. Without the accurate and timely reporting of such price data, a market in such
6 securities could hardly exist." Complaint, ¶13.

7 Tacitly recognizing the regulatory nature of the conduct at issue, Opulent Funds baldly state
8 that, "[a]s other courts have recognized, *Sparta* is limited to where the NASD is acting *solely* in its
9 role as regulator." Motion to Remand, p. 9 (emphasis added), *citing Lippitt v. Raymond James Fin.*
10 *Servs., Inc.*, 340 F.3d 1033, 1045 (9th Cir. 2003); *Finance and Trading Ltd. v. Rhodia*, 2004 U.S.
11 Dist. LEXIS 24148, **24-26 (S.D.N.Y. Nov. 30, 2004). But *Sparta Surgical* is not limited to
12 conduct that is "solely" regulatory, and the two cases Opulent Funds rely on in support of this
13 statement say no such thing. Indeed, neither of those cases even involve NASD, Nasdaq, or any other
14 SRO registered with, and regulated by, the SEC.

15 Opulent Funds' reliance on the *Lippitt* case is particularly inappropriate. Motion to Remand,
16 p. 9, *citing Lippitt*, 340 F.3d at 1045. Contrary to Opulent Funds' representation, the *Lippitt* court
17 never stated that *Sparta Surgical* was limited to instances in which the SRO was acting as a regulator.
18 Indeed, *Lippitt* was not even a lawsuit against an SRO, but was instead a suit against brokerage firms
19 alleging that they sold certain securities in a misleading manner, in violation of state law. *Lippitt*,
20 340 F.3d at 1036-37. The challenged conduct of the brokerages in the *Lippitt* case—unlike Nasdaq's
21 alleged conduct in this case—was not the conduct of a SRO defendant carrying out a duty
22 specifically created under the Exchange Act and SEC regulations, and was not a regulatory function
23 that the defendants in the *Lippitt* case were required by federal law to carry out and adhere to.

24 Similarly, *Finance and Trading* was a state-law fraud and misrepresentation case brought by
25 investors against a corporation and certain of its officers, based on statements made in connection
26 with the purchase of securities. 2004 U.S. Dist. LEXIS 24148 at *3-10. No SRO was involved as a
27 party to that case, and thus—unlike in the instant case—there was no defendant that was required by
28 federal law to adhere to its own SEC-approved rules. The *Finance and Trading* court explained

Gibson, Dunn &
Crutcher LLP

10

OPPOSITION TO MOTION TO REMAND                                              Case No. C 07 3683 RMW

*Sparta Surgical* by stating that, in *Sparta Surgical*, "were it not for federal law, plaintiffs' claims would not have existed, and [therefore] removal was justified in that case." *Id*. at *24. The same is true here—Nasdaq could neither calculate nor disseminate the Nasdaq-100 Index for purposes of options trading if it had not first received approval from the SEC for its specific methods for doing so. *See* SEC Release No. 34-19264, 47 Fed. Reg. at 53,982 n.6. Nor may Nasdaq calculate and disseminate the Nasdaq-100 Index in a manner not approved by the SEC, nor may it continue to calculate and disseminate the Nasdaq-100 Index in the absence of SEC approval. *See* 15 U.S.C. § 78s(g)(1).

Thus, unlike in *Lippitt* and *Finance and Trading*, the alleged conduct at issue here fits squarely within the language of Section 27 of the Exchange Act: the federal district court has "*exclusive* jurisdiction of violations of [the Exchange Act] or the rules and regulations thereunder, and of *all* suits in equity or actions at law brought to enforce *any duty or liability created* by [the Exchange Act] or the rules and regulations thereunder." 15 U.S.C. § 78aa (emphases added).

**D.   Opulent Funds Are Not Entitled To An Award Of Fees Because Removal Was Proper.**

Opulent Funds request an award of their costs and any actual expenses, including attorneys' fees, they may have incurred as a result of Nasdaq's removal of this action, should the Court grant Opulent Funds' motion for remand. Motion to Remand, p. 10. As demonstrated above, removal is proper here as Opulent Funds have asserted claims over which this Court has exclusive jurisdiction. Even if the Court disagrees, however, Opulent Funds should not be awarded any costs associated with their remand motion.

Under 28 U.S.C. § 1447(c), the decision whether to award attorneys' fees and other costs is left to the court's discretion. *Coman v. International Playtex, Inc*., 713 F. Supp. 1324, 1329 (N.D. Cal. 1989). An award of costs under Section 1447(c) is justified only where there is no "colorable" or "reasonable basis for removal." *Draper v. ERB*, No. C-93-4600, 1994 WL 478821, at *2 (N.D. Cal. Aug. 25, 1994), *aff'd*, 62 F.3d 1424 (9th Cir. 1995); *Coman*, 713 F. Supp. at 1329; *Zandi-Dulabi v. Pacific Retirement Plans, Inc.*, 828 F. Supp. 760, 764 (N.D. Cal. 1993). Thus, even if this Court ultimately disagrees with Nasdaq's arguments and remands this action to the Superior Court, it

should not award costs because, for the reasons discussed herein, Nasdaq had a reasonable basis for removal in light of Opulent Funds' allegations and controlling Ninth Circuit case law.

## IV.    CONCLUSION

For the foregoing reasons, Nasdaq respectfully requests that Court deny Opulent Funds' motion to remand and its request for costs.

DATED:  September 7, 2007

Respectfully submitted.

GIBSON, DUNN & CRUTCHER LLP

By: _____/s/_____
Ethan D. Dettmer

Attorneys for The Nasdaq Stock Market, Inc.