GIBSON, DUNN & CRUTCHER LLP
ETHAN D. DETTMER, SBN 196046
AMANDA M. ROSE, SBN 222074
One Montgomery Street
San Francisco, California 94104
Telephone: (415) 393-8200
Facsimile: (415) 986-5309
Email: edettmer@gibsondunn.com

Attorneys for
THE NASDAQ STOCK MARKET, INC.

THOMAS P. MORAN
Associate General Counsel
THE NASDAQ STOCK MARKET, INC.
9600 Blackwell Road, 3rd Floor
Rockville, Maryland 20850

Of Counsel

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPULENT FUND, L.P., a Delaware limited partnership and OPULENT LITE, L.P., a Delaware limited partnership,<br><br>Plaintiffs,<br><br>v.<br><br>THE NASDAQ STOCK MARKET, INC., a Delaware Corporation,<br><br>Defendant. | CASE NO. C 07 3683 RMW<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT THE NASDAQ STOCK MARKET, INC.**<br>[Fed. R. Civ. P. 12(b)(1), 12(b)(6) & 12(h)(3)]<br><br>Date: September 28, 2007<br>Time: 9:00 a.m.<br>Judge: Hon. Ronald M. Whyte |

Defendant The Nasdaq Stock Market, Inc. ("Nasdaq") respectfully submits this Reply Memorandum in support of its Motion to Dismiss the Complaint:

In their Opposition, and in their Complaint, plaintiffs Opulent Fund, L.P. and Opulent Lite, L.P. make a series of admissions that are dispositive of this case. They admit as follows:

- "[W]here a self-regulatory organization ('SRO') such as Nasdaq acts pursuant to the regulatory powers delegated to it by Congress and the SEC pursuant to the Securities Exchange Act of 1934 ('Exchange Act') it has immunity from suit." Opposition, p. 4.
- "[W]here a plaintiff challenges an SRO's actions taken pursuant to its regulatory role it must start by challenging such actions with the SEC." *Id*. at p. 6.
- "The SEC has clearly approved the use of the Nasdaq 100 and the methodology used to calculate its value." *Id*. at p. 5.
- Finally, plaintiffs admit the regulatory nature of Nasdaq's challenged actions, as "[t]he orderly and accurate dissemination of price data for the Nasdaq 100 is essential if investment professionals and market participants such as the managers of Opulent are to provide liquidity to the market for the Nasdaq 100 and its derivatives." Complaint, ¶ 13.

Plaintiffs advance only two arguments in an effort to avoid the logical conclusion of these admissions, both of which are unavailing.

***First***, plaintiffs suggest that Nasdaq is not entitled to immunity, and plaintiffs are not required to exhaust their administrative remedies, because "Nasdaq has become a stand alone for profit entity which is now publicly traded," and because Nasdaq's challenged conduct involves "clearly commercial activities." Opposition, pp. 4-5 & 6-7.

But plaintiffs' attempt to create a conflict between Nasdaq's for-profit structure and its immune regulatory functions must fail: Plaintiffs admit that Nasdaq's calculation and dissemination of the value of the Nasdaq-100 are, "at least in part," carried out as statutory and SEC-approved regulatory functions. *Id*. at pp. 2, 5; Complaint, ¶ 13. And "SROs [do not] lose their immunity because, in addition to their regulatory functions, they are also profit-making and profit-seeking enterprises." *Dexter v. Depository Trust & Clearing Corp.*, 406 F. Supp. 2d 260, 263 (S.D.N.Y. 2005), *aff'd*, 219 Fed. Appx. 91 (2d Cir. 2007). Rather, it is Nasdaq's "*function* as a quasi-

governmental authority" that is the source of its immunity here. *D'Alessio v. New York Stock Exch.*, *Inc.*, 258 F.3d 93, 105 (2d Cir. 2001) (emphasis in the original); *see also DL Capital Group*, *LLC v. Nasdaq Stock Market*, *Inc.*, 409 F.3d 93, 98 (2d Cir. 2005) (holding that for-profit Nasdaq was immune when acting "consistently with [its] quasi-governmental powers"); *Sparta Surgical Corporation v. NASD*, 159 F.3d 1209, 1214 (9th Cir. 1998) (concluding that NASD is immune when allegedly acting as for-profit "market facilitator").

Furthermore, the SEC specifically approved the for-profit nature of Nasdaq, finding that it would not undermine Nasdaq's ability to "carry out the purposes of the [Exchange] Act." SEC Release No. 34-42983, *Order Approving Proposed Rule Change Amending the Nasdaq By-Laws and Restated Certificate of Incorporation*, 65 Fed. Reg. 41,116, 41,117 (July 3, 2000). It is inconceivable that the SEC would approve a structure that would severely limit the absolute immunity of an SRO. *See D'Alessio*, 258 F.3d at 105; *see also Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 59 (2d Cir. 1996) (allowing damages suits against defendant SRO "would clearly stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . namely, to encourage forceful self-regulation of the securities industry" (citations and internal quotation omitted) (alteration in original)).

Plaintiffs' hypothetical analogy involving a car accident caused by a Nasdaq employee (Opposition, p. 7) does nothing but underscore the appropriateness of immunity and exhaustion of administrative remedies in this case. As plaintiffs state, Nasdaq would not "with a straight face say" that the hypothetical personal injury suit would be subject to immunity or exhaustion (*ibid*.), because the facts giving rise to that hypothetical suit do not arise "under the aegis of the Exchange Act's delegated authority." *Sparta Surgical*, 159 F.3d at 1214. Here, in sharp contrast, plaintiffs *admit* that the conduct they challenge is, "at least in part," regulatory conduct arising out of Nasdaq's delegated duties under the Exchange Act (Opposition, pp. 2, 5; Complaint, ¶ 13), and thus Nasdaq is immune from plaintiffs' claims. *Sparta Surgical*, 159 F.3d at 1214; *see also DL Capital*, 409 F.3d at 95 ("[A]bsolute immunity must be absolute.").

***Second***, plaintiffs suggest that their claims survive because they do not challenge "Nasdaq's authority to publicly disseminate pricing data for the Nasdaq 100," but rather allege only that Nasdaq

incorrectly *applied* "regulatory approved methodology to the price data for the 100 stocks comprising the Nasdaq 100." Opposition, p. 5. This argument has been rejected squarely and repeatedly.

In *Sparta Surgical*, the Ninth Circuit held that the NASD was immune from claims that it misapplied and violated its own rules. 159 F.3d at 1211, 1215. In *D'Alessio*, the Second Circuit held that the NYSE was immune from claims arising from alleged "improper performance" of its duties under the Exchange Act. 258 F.3d at 106. After all, "[t]here would be no point to an immunity that only protected actions that were in any event correct." *Dexter*, 406 F. Supp. 2d at 263. What matters for the immunity analysis is that the activity engaged in—whether conducted properly or improperly—arises out of the SRO's regulatory functions under the Exchange Act. *See DL Capital*, 409 F.3d at 98 (explaining that SRO immunity does not turn on the state of mind of the defendant); *Sparta Surgical*, 159 F.3d at 1215 ("If we take Sparta's complaint at face value, which we must, defendants acted in a capricious, even tartuffian manner which caused Sparta enormous damage. Nonetheless, when Congress elected 'cooperative regulation' as the primary means of regulating the over-the-counter market, the consequence was that self-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity.").

\* \* \* \* \*

Plaintiffs admit that Nasdaq is entitled to immunity in this suit, and that plaintiffs are required to exhaust their administrative remedies, if the challenged actions arise out of Nasdaq's regulatory function under the Exchange Act. Plaintiffs also admit that Nasdaq's challenged actions, "at least in part," are part of Nasdaq's regulatory duties arising out of the Exchange Act. Based on these admissions, and the other authority and arguments set forth in Nasdaq's submissions to the Court, plaintiffs' Complaint should be dismissed, with prejudice.

DATED: September 14, 2007

Respectfully submitted.

GIBSON, DUNN & CRUTCHER LLP

By: _____/s/_____
Ethan D. Dettmer

Attorneys for The Nasdaq Stock Market, Inc.