1

2

3

4  **E-FILED on ___10/12/07___**

5

6

7

8  IN THE UNITED STATES DISTRICT COURT

9  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  SAN JOSE DIVISION

11

12  OPULENT FUND, L.P., a Delaware limited       No. C-07-03683 RMW
    partnership and OPULENT LITE, L.P., a
13  Delaware Limited Partnership,                ORDER DENYING PLAINTIFFS' MOTION
                                                 FOR REMAND AND DENYING
14              Plaintiffs,                       DEFENDANT'S MOTION TO DISMISS

15        v.                                      **[Re Docket Nos. 5, 8]**

16  THE NASDAQ STOCK MARKET, INC., a
    Delaware Corporation,
17
                Defendant.
18

19
        Plaintiffs Opulent Fund, L.P. and Opulent Lite, L.P. (collectively, "the Opulent Funds")
20
    move to remand this case to Santa Clara County Superior Court because this court lacks subject
21
    matter jurisdiction over plaintiffs' tort claims.  Defendant Nasdaq Stock Market, Inc. ("Nasdaq")
22
    opposes the motion, and further moves to dismiss the complaint.
23
        The court has read the moving and responding papers and considered arguments of counsel
24
    presented at a hearing on September 28, 2007.  For the reasons set forth below, the court denies
25
    Opulent Funds' motion to remand and denies Nasdaq's motion to dismiss.
26
                                    **I. BACKGROUND**
27
        **A.      Factual Allegations**
28

ORDER DENYING PLAINTIFFS' MOTION FOR REMAND AND DENYING DEFENDANT'S MOTION TO DISMISS—C-07-03683
RMW
TSF

1    Both Opulent Fund, L.P. and Opulent Lite, L.P. are Delaware limited partnerships doing

2  business in Santa Clara County.  Compl. ¶¶ 4-5.  The funds are highly successful private investment

3  partnerships that trade in stock index options, including options derived from the value of the

4  Nasdaq-100.  *Id.* ¶ 9. Nasdaq is a national securities exchange and self-regulatory organization

5  ("SRO") registered with the Securities and Exchange Commission pursuant to 15 U.S.C. § 78o-3.

6  Not. of Removal ¶¶ 4-5.

7    The Nasdaq-100 is an index of the 100 largest non-financial securities traded on the Nasdaq

8  Exchange.  *Id.* ¶ 5.  The index is weighted by the market value of each the 100 component securities,

9  whose values depend on their NASDAQ Official Opening Price ("NOOP"). Compl. ¶ 10. The SEC

10  has reviewed and approved the structure of the Nasdaq-100 index pursuant to Rule 19b-4. SEC

11  Release No. 34-21890, 50 Fed. Reg. 12,672 (March 29, 1985) (proposing the Nasdaq-100 and how

12  to calculate the index); SEC Release No. 34-22404, 50 Fed. Reg. 38,235 (Sept. 20, 1985) (approving

13  trading in options based on the Nasdaq-100).  The SEC also approved Nasdaq's calculation and

14  publication of NOOP prices.  SEC Rel. No. 34-48997, 69 Fed. Reg. 716 (Jan. 6, 2004).  Nasdaq

15  encourages investors to use the Nasdaq-100 index to create derivatives, and the accurate and timely

16  reporting of the index's value is critical to the existence of the market for Nasdaq-100 derivatives.

17  Compl. ¶ 13.

18    On the morning of May 19, 2006, the Opulent Funds maintained a large position in Nasdaq-

19  100 options.  Compl. ¶ 10.  The Opulent Funds allege that based on the NOOPs of the underlying

20  stocks, the price of the Nasdaq-100 on that morning should have been 1589.18 . *Id.* ¶ 11.  Instead,

21  Nasdaq announced that the Nasdaq-100's price was 1583.45.  *Id.* ¶ 10.  This difference of slightly

22  less than six points (5.73) had a significant impact on the Opulent Funds' portfolio of short put

23  options with a strike price of 1590, resulting in much larger losses on the contracts.  *Id.* ¶ 12.

24  **B.    Procedural History**

25    Opulent Funds filed this action in Santa Clara County Superior Court on May 16, 2007 and

26  served Nasdaq on June 19, 2007.  Nasdaq promptly removed the case to this court on July 17, 2007,

27  asserting that this court has exclusive jurisdiction because the complaint alleges a violation of the

28  federal securities laws.  *See* 28 U.S.C. § 1441; 15 U.S.C. § 78aa.

ORDER DENYING PLAINTIFFS' MOTION FOR REMAND AND DENYING DEFENDANT'S MOTION TO DISMISS—C-07-03683 RMW
TSF                                                                                     2

# II. ANALYSIS

### A.    The Opulent Funds' Motion to Remand

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).  Section 27 of the Exchange Act provides that the federal district court has exclusive jurisdiction over "violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa.  Nasdaq argued in its Notice of Removal that the Opulent Funds' complaint "necessarily alleges a violation of SEC approved rules," and therefore the federal courts have exclusive jurisdiction over the case and removal was proper.

The Opulent Funds' complaint alleges two claims for relief: negligence under California common law and California Civil Code § 1708 and negligent misrepresentation under California common law. Compl. ¶¶15-25. The plaintiff is ordinarily "the 'master' of his complaint" and is free to avoid pleading claims under federal law to stay out of federal court. *Ultramar Am. Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990).  Nevertheless, a state law claim may create a federal question if the claim "necessarily turns upon construction of a substantial question of federal law, i.e., if federal law is a necessary element." *Id.*

In this case, the Opulent Funds allege that Nasdaq negligently miscalculated the price of the Nasdaq-100, thereby breaching a duty it owed to market professionals like the Opulent Funds not to act negligently.  Compl. ¶¶ 16, 17. The Opulent Funds also allege that Nasdaq negligently misrepresented the true price of the Nasdaq-100 when it mistakenly reported the index's value as 1583.44. *Id.* ¶¶ 22-23.  Neither of these claims implicates a federal question on its face.

Nasdaq argues, however, that its duty to calculate and disseminate the value of the Nasdaq-100 exists purely as a matter of federal law, and absent the SEC-approved rules governing the Nasdaq-100, it would not have owed a duty to the Opulent Funds.  Nasdaq therefore argues that the Opulent Funds' claims necessarily allege a violation of a regulation or duty under the Exchange Act. The Exchange Act, in turn, vests this court with exclusive jurisdiction over "all suits in equity and

1   actions at law brought to enforce any liability or duty created by this chapter or the rules and

2   regulations."  15 U.S.C. § 78aa.

3           The Ninth Circuit decided a similar case in *Sparta Surgical Corp. v. Nat'l Ass'n of Sec.*

4   *Dealers, Inc.*, 159 F.3d 1209 (9th Cir. 1998). In *Sparta Surgical*, the plaintiff alleged that Nasdaq

5   violated its rules regarding suspension of trading, giving rise to a variety of state common law

6   claims. *Id.* at 1210-11.  The rules involved in the case were issued pursuant to the Exchange Act and

7   approved by the SEC.  *Id.* at 1212.  The Ninth Circuit held that removal was proper because all cases

8   brought to enforce a duty created by a rule under the Exchange Act may only be heard in federal

9   court.  *Id.* The Ninth Circuit reached this conclusion because the propriety of Nasdaq's actions in

10  suspending trading could only be gauged by reference to the federally-authorized rules.  *Id.*  "If

11  NASD's actions conformed to the rules, there [could] be no viable cause of action; if its actions

12  violated the rules, any claim [fell] under the imperative of 15 U.S.C. § 78aa[.]"  *Id.*

13          The case of *Lippitt v. Raymond James Financial Servs., Inc.*, 340 F.3d 1033 (9th Cir. 2003)

14  demonstrates the opposite of this principle.  In *Lippitt*, the defendants engaged in a course of

15  conduct that may have violated various New York Stock Exchange rules promulgated by the SEC

16  under the Exchange Act. *Id.* at 1043.  Whether it did or not had no impact on plaintiff's state law

17  unfair competition claim, however, because California unfair competition law turned on whether or

18  not the defendants' conduct was "unfair" or "fraudulent," not whether it violated various stock

19  exchange rules.  *Id.* at 1043-45. Because the state court would have had no need to refer to the

20  NYSE regulations – or any federal law – the Ninth Circuit held that there was no substantial federal

21  question and hence removal was improper.  *Id.* at 1045-46.

22          Here, the Opulent Funds' tort claims arise from Nasdaq's alleged failure to calculate the price

23  of the Nasdaq-100 in accord with the SEC-approved regulation governing the Nasdaq-100's

24  existence.  The only way to judge Nasdaq's conduct is in reference to the SEC-approved rules

25  governing how the Nasdaq-100 is calculated.  Only if Nasdaq violated those regulations can the

26  Opulent Funds recover on their negligence and negligent misrepresentation claims.  The Ninth

27  Circuit's decision in *Sparta Surgical* controls the outcome of this case.  Because the SEC-approved

28

1  rules are a "necessary element" of the Opulent Funds' claims, there is a substantial question of

2  federal law that justified removal.

3       The Opulent Funds advance two arguments to distinguish this case from *Sparta Surgical*.

4  First, the Opulent Funds argue that the rules underlying the calculation of the Nasdaq-100 are not

5  "rules or regulations under the federal securities laws," but instead are merely contractual "rules of

6  the exchange" that do not implicate Section 27 of the Exchange Act.  *See Petrie v. The Pacific Stock*

7  *Exchange, Inc.*, 982 F. Supp. 1390, 1395 (N.D. Cal. 1997).  The "rules of the exchange" in *Petrie*

8  were SEC-approved rules governing arbitration. *Id.* at 1393, 1395. Nonetheless, this court held that

9  "the interpretation and investigation of Exchange's rules does not confer federal question

10 jurisdiction." *Id.* at 1395. This court has previously noted tension between *Petrie* and *Sparta*

11 *Surgical*, and suggested that the two cases could be reconciled because *Petrie* involved claims

12 brought entirely in terms of state contract law. *NASD Dispute Resolution, Inc. v. Judicial Council of*

13 *California*, 222 F. Supp. 2d 1055, 1061 & fn. 4 (N.D. Cal. 2002).  The Ninth Circuit's decision in

14 *Sparta Surgical*, however, also arose from a case involving purely state law claims.  *See Sparta*

15 *Surgical*, 159 F.3d at 1211-12.  The Ninth Circuit's decision did not emphasize whether the plaintiff

16 chose to forgo federal claims and bring only state claims, but instead turned on whether or not relief

17 depended on conduct conforming with an SEC approved rule promulgated under the Exchange Act.

18 *Id.* at 1212.  Because the conduct in this case can only be judged in relation to an SEC approved

19 rule, it raises a substantial federal question and, in light of *Sparta Surgical*, *Petrie* is not applicable

20 to the current circumstances.

21      The Opulent Funds next try to distinguish *Sparta Surgical* and Section 27 as giving rise to

22 federal jurisdiction only in instances where the defendant solely acts as a regulator. The Opulent

23 Funds argue that since Nasdaq profits from calculating and distributing the value of the Nasdaq-100,

24 it was not acting solely in its regulatory capacity.   For support, the Opulent Funds rely on *Hawkins*

25 *v. Nat'l Ass'n of Sec. Dealers, Inc.*, 149 F.3d 330, 331 (5th Cir. 1998) for the proposition that

26 removal is only appropriate where a plaintiff's claim challenges a defendant's regulatory conduct,

27 and not where it acts in another capacity, for example, as an arbitrator.  The Opulent Funds distort

28 the Fifth Circuit's holding.  The plaintiff in *Hawkins* alleged violations of the NASD's Code of

Arbitration Procedure (which was approved by the SEC) and challenged the NASD's conduct as an arbitrator. *Id.* at 331.  Quite the opposite of finding that no subject matter jurisdiction existed, the Fifth Circuit held that the federal courts had exclusive subject matter jurisdiction over the plaintiff's claims.  *Id.* Whether a self-regulated organization violates duties under the Exchange Act in its regulatory or for-profit capacity has no bearing on the propriety of federal court jurisdiction.  The text of Section 27 plainly confers exclusive subject matter on the federal courts in all cases, making no distinction between for-profit and regulatory activity.

Accordingly, the Opulent Funds' motion to remand this case to Santa Clara County Superior Court is denied.

**B.      Nasdaq's Motion to Dismiss**

Nasdaq moves to dismiss this case under Rule 12(b)(6) because an SRO, like Nasdaq, is absolutely "immune from liability based on the discharge of its duties under the Exchange Act." *Sparta Surgical*, 159 F.3d at 1213.  The doctrine of absolute immunity inheres in SROs whenever they exercise "quasi-governmental powers [] consistent with the structure of the securities market as constructed by Congress."  *Id.*  On the other hand, "when conducting private business, [an SRO] remains subject to liability."  *Id.* at 1214.  The justification for this circumscribed absolute immunity is that Congress has enabled the SROs to perform "a variety of regulatory functions that would, in other circumstances, be performed by a government," and that the government would be immune when performing these functions. *Id.*  Examples of such regulatory functions include conducting disciplinary proceedings, arbitrating claims and monitoring a market to protect the public.  *Id.* at 1213-15 (citing cases holding an SRO immune).  "The common thread in these cases is that absolute immunity attaches where the activity relates to the proper functioning of the regulatory system."  *In re NYSE Specialists Securities Litigation*, __ F.3d __, 2007 WL 2701341, at *6 (2d Cir. 2007) (internal quotation marks and citations omitted).  "Indeed, every case that has found an SRO absolutely immune from suit has done so for activities involving an SRO's performance of regulatory, adjudicatory, or prosecutorial duties in the stead of the SEC." *Weissman v. Nat'l Ass'n of Sec. Dealers*, __ F.3d __, 2007 WL 2701308, at *3 (11th Cir. 2007) (en banc) (collecting cases).

1    The Opulent Funds argue that pricing an index is not a "regulatory function" and therefore

2    not conduct cloaked with absolute immunity.  Upon examining the nature and functions of Nasdaq's

3    alleged actions, the court agrees.  Nasdaq wished to create a derivatives market based on the stocks

4    listed on its exchange.  Accordingly, Nasdaq proposed, and the SEC authorized, the Nasdaq-100

5    index.  Nasdaq encouraged investors to create instruments based on the index's value and chose to

6    disseminate this information.  Nasdaq took this course of action because it profits from selling the

7    market price data.[1]  In choosing to create the index and disseminate this price information, Nasdaq

8    "represents no one but itself."  *See Weissman*, 2007 WL 2701308, at *4-*5.  The SEC regulates the

9    securities markets, but it would not create an index and volunteer to disseminate pricing data if

10   Nasdaq did not exist.  *Cf. id.* at *8 (Pryor, J., concurring-in-part and dissenting-in-part) ("Because

11   the SEC would not promote or tout a particular stock fund or stock, NASDAQ is not entitled to

12   absolute immunity when it does so.").

13   While Nasdaq's conduct in this case appears more regulatory than its advertising activities in

14   *Weissman*, *see id.* at *4, its pricing conduct is much less "quintessentially regulatory" than deciding

15   to suspend trading, as in *Sparta Surgical*.  *See* 159 F.3d at 1214-15.  According to the Ninth Circuit,

16   the NASD's behavior in *Sparta Surgical* was regulatory because it was "charged with the duty and

17   responsibility of monitoring its market carefully to protect the investing public."  *Id.* at 1214.

18   Nasdaq's duty to accurately calculate and disseminate an index price does not function to protect

19   investors; instead, Nasdaq's actions function to create a market and increase trading.  In its reasoning

20   in *Sparta Surgical*, the Ninth Circuit suggested that mere "market facilitation" is not regulatory

21   conduct.  *See id.* at 1214-15.  The Eleventh Circuit has also suggested that actions taken to "increase

22   trading volume" are non-regulatory.  *See Weissman*, 2007 WL 2701308, at *2 ("[A]s a private

23   corporation, NASDAQ may engage in a variety of non-governmental activities that serve its private

24   business interests, such as its efforts to increase trading volume[.]").  That the SEC approved the

25

26   [1]    That Nasdaq happens to profit from its activities is not critical. The immunity inquiry
     turns on the nature of the challenged conduct, not its profitability because "*Sparta* admits no

27   exceptions: if the action is taken under the 'aegis of the Exchanges Act's delegated authority,' the
     [SRO] is protected by absolute immunity from money damages." *P'ship Exchanges Sec. Co. v. Nat'l

28   *Ass'n of Sec. Dealers, Inc.*, 169 F.3d 606, 608 (9th Cir. 1999); *accord DL Capital Group, LLC v.
     Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 100 & fn. 4 (2d Cir. 2005).

1  pricing formula against which Nasdaq's conduct will be judged does not automatically convert

2  Nasdaq's conduct into an immunized "regulatory function."  SEC approval of a rule imposing a duty

3  on an SRO is not the *sine qua non* of SRO immunity; engaging in regulatory conduct is.  Here,

4  Nasdaq's actions do not partake of the same "regulatory" character as suspending trading, banning

5  traders, or carrying out disciplinary actions.  These actions all involve oversight of the market to

6  protect investors; facilitating derivative trading does not.  Nasdaq's market facilitating actions at

7  issue in this case were non-regulatory, and hence there is no absolute immunity.[2]

8      Nasdaq also argues that the Opulent Funds have failed to exhaust their administrative

9  remedies, requiring the case to be dismissed.  The SEC has jurisdiction to review alleged violations

10 by an SRO when the SRO has acted in its regulatory capacity.  *See* 15 U.S.C. § 78s(h)(1) (permitting

11 the SEC to suspend, censure or impose other limits on an SRO for violating the Exchange Act, rules

12 or regulations thereunder, or the SRO's own rules).  However, no case cited by Nasdaq holds that the

13 SEC has exclusive jurisdiction over SRO conduct falling outside of the SRO's regulatory functions.

14 *See First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 692 (3d Cir. 1979) (involving a

15 disciplinary hearing); *Cook v. NASD Regulation, Inc.*, 31 F.Supp.2d 1245, 1249 (D. Colo. 1998)

16 (challenging a disciplinary hearing); *Rudolph v. Fulton*, 178 Cal. App. 2d 339 (1960) (challenging a

17 disciplinary hearing); *see also J.W. Gant & Assocs., Inc. v. NASD*, 791 F. Supp. 2d 1022, 1025 (D.

18 Del. 1992) ("The doctrine of administrative exhaustion has been found to apply *to the disciplinary*

19 *proceedings* of the NASD.") (emphasis added).  Absent authority to the contrary, the court does not

20 believe administrative exhaustion is required in this context.

21

22

23

24

25

26

27     [2]    Furthermore, "grants of immunity must be narrowly construed" because they deprive injured parties of remedies.  *See Weissman*, 2007 WL 2701308, at *3; *see also Marbury v. Madison*, 5 U.S. 137, 147 (1803) ("It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress.").

28

1

### III.  ORDER

2       For the foregoing reasons, the Opulent Funds' motion to remand is DENIED and Nasdaq's

3  motion to dismiss with prejudice is DENIED.  The parties are instructed to appear for a case

4  management conference on November 9, 2007 at 10:30.

5

6

7  DATED:        10/12/07                          *Ronald M Whyte*

8                                                  RONALD M. WHYTE
                                                   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

George Schieffeli Trevor          gtrevor@trevorlaw.com

**Counsel for Defendant:**

Ethan D. Dettmer                edettmer@gibsondunn.com
Amanda Marie Rose               arose@gibsondunn.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.


**Dated:**        10/12/07                               TSF
                                                **Chambers of Judge Whyte**